**UNITED STATES of America, Plaintiff,**

v.

**YONKERS BOARD OF EDUCATION; City of Yonkers; and Yonkers Community Development Agency, Defendants.**

**80 CIV 6761 (LBS).**

United States District Court,
S. D. New York.

June 29, 1981.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., James P. Turner, Acting Asst. Atty. Gen., Gen. Litigation Section, Civil Rights Division, Dept. of Justice, Washington, D. C., for plaintiff; Thomas M. Keeling, Joshua P. Bogin, Theodore M. Shaw, Kenneth J. Barnes, Washington, D. C., of counsel.

N.A.A.C.P., New York City, for plaintiffs-intervenors; Thomas I. Atkins, Charles E. Carter, Margrett Ford, Teresa Demchak, New York City, of counsel.

Vedder, Price, Kaufman, Kammholz & Day, New York City, for City of Yonkers and Yonkers Community Development Agency; Thomas F. Hilbert, Michael W. Sculnick, James M. Donegan, Gerald S. Hartman, New York City, of counsel.

Butzel, Long, Gust, Klein & Van Zile, for Yonkers Bd. of Ed., John B. Weaver, John H. Dudley, Jr., Mark T. Nelson, Detroit, Mich., Hall, Dickler, Lawler, Kent & Howley, New York City, of counsel.

## OPINION

SAND, District Judge.

The defendants in this action have filed various motions to sever, strike, and dismiss, as well as motions directed to the form of the complaint. There is also before the Court a motion by the National Association for the Advancement of Colored People ("NAACP"), Yonkers Branch, and an individual student, by her next friend, on behalf of themselves and all individuals similarly situated, to intervene in this proceeding. The defendants' motions to sever and dismiss are denied, without prejudice to renewal at a later stage in the proceedings, principally because they have been made prematurely. Plaintiff's allegations with respect to the interrelationship between housing and school segregation raise profound and complex factual and legal questions. However, it is inappropriate to deal

with the defendants' contentions prior to any discovery or evidentiary presentation. The defendants' motions addressed to the form of the complaint are denied and the motion to intervene is granted.

*The Complaint*

We will first deal with a series of motions addressed to the complaint itself. In dealing with these motions, it must be recognized that there has as yet been no trial or evidentiary hearing held in these proceedings and that no facts developed during discovery have been presented. For the purposes of these motions, the Court must accept the allegations of the complaint and at this stage of the litigation, assume that all of the matters alleged in the complaint are true and provable. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Shear v. National Rifle Assoc.,* 606 F.2d 1251, 1253 (D.C.Cir.1979); *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir. 1977); *Gumer v. Shearson Hammill & Co.,* 516 F.2d 283, 286 (2d Cir. 1974). An understanding of the motions and of the respective contentions of the parties requires a review of the challenged allegations of the complaint in some detail.

By complaint filed December 1, 1980 against the Yonkers Board of Education ("School Board"), City of Yonkers ("City") and Yonkers Community Development Agency ("CDA"), the Attorney General, on behalf of the United States, instituted this proceeding to "enforce the provisions of Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000c–6, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* the regulations of the United States Department of Education which implement Title VI, 34 C.F.R. § 100.8, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), 42 U.S.C. § 3601 *et seq.,* the Fourteenth Amendment to the United States Constitution, and the contractual assertions made by the defendant Yonkers Board of Education in consideration of its continuing receipt of federal financial assistance." Complaint, ¶ 1.

The complaint alleges that the defendant Yonkers Board of Education is a body corporate entrusted with the general management and control over the educational affairs in the Yonkers School District, a department of the defendant, City of Yonkers. The defendant, the City of Yonkers, the complaint alleges, is a municipal corporation governed by an elected City Council and Mayor and an appointed City Manager. *Id.,* ¶ 4. It exercises, according to the complaint, control over the school board through its control over the budget and disbursal of monies to the school board "including but not limited to, expenditures for such items as employee salaries, construction of schools, and the purchase or sale of real property." *Id.,* ¶ 4(a). It is further alleged that the Mayor of the City of Yonkers appoints all nine members of the school board. *Id.,* ¶ 4(b). The defendant Yonkers Community Development Agency is, according to the complaint, a body corporate doing business in Yonkers, governed by seven members, including the City Manager of Yonkers, the Mayor of Yonkers, the Corporation Counsel for the City of Yonkers, the City Comptroller and two City residents appointed by the Mayor with the advice and consent of the City Council. *Id.,* ¶ 5.

The complaint alleges further that "the schools in the Yonkers City School District are substantially segregated by race" *id.,* ¶ 15, and that "[t]he segregated condition of the public schools operated by the School Board has been caused, in substantial part, by intentional, racially discriminatory actions and omissions by the defendant School Board and the defendant City of Yonkers. Paragraph 17 of the complaint enumerates "specific racially discriminatory practices of the School Board which have resulted in the unlawful segregation of students by race" and paragraph 19 of the complaint alleges that "specific racially discriminatory practices of the defendant City of Yonkers which have resulted in the unlawful segregation of students by race include, but are not limited to, the following: (a) the selection of sites for public and subsidized housing units which intentionally and effectively perpetuated and seriously aggravated ra-

cial segregation in the City of Yonkers and in the Yonkers School District; and (b) the appointment to the School Board, since 1975, of individuals opposed to the desegregation of the Yonkers Public Schools."

## The Motion to Sever

The School Board has moved, pursuant to Fed.R.Civ.P. 21, to sever the "plaintiff's claims against the Yonkers Board of Education from those against the Yonkers Community Development Agency."[1] In support of this motion, the School Board alleges:

"Plaintiff's Complaint contains two separate and distinct areas of alleged wrongdoing. First plaintiff alleges that the Yonkers Board of Education has unlawfully operated the public schools. Second, plaintiff alleges that the Yonkers Community Development Agency has unlawfully located, constructed and operated subsidized housing in the City of Yonkers. It is clear that the Board of Education has no authority over any aspect of public housing and that the Community Development Agency has no authority over the public schools. If either has been guilty of wrongdoing, the other cannot be held responsible or be required to undertake remedial action therefor.

These two separate claims should be ordered severed in order to reach a speedy and inexpensive determination of each of plaintiff's allegations." School Board Motion to Sever, ¶ 1.

Further, the Board relies on language contained in *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 22–23, 91 S.Ct. 1267, 1279, 28 L.Ed.2d 554 (1971) and *Hart v. Community School Board*, 512 F.2d 37, 41 (2d Cir. 1975) wherein the federal courts are admonished not to seek, in school desegregation cases, to deal too broadly with all of the ills of our society, including all aspects of racial discrimination. The

School Board also contends that discovery costs will be reduced by severance because the City and the School Board will not be required to send representatives to each other's depositions.

Plaintiff responds that the motion to sever should be denied because misjoinder under Rule 20(a) has not occurred, and because "the gravamen of the United States' complaint [is] that the City, with and through two agencies under its jurisdiction and authority, has implemented a policy of racially motivated discrimination which has promoted unlawful racial segregation in the public schools and in housing patterns throughout Yonkers." Response of the United States in Opposition at 13. Plaintiff disputes the Board's contention that severance will reduce discovery costs, based on the identity of claims asserted against the City and the CDA.[2] Finally, the United States argues that it is proper to include in one lawsuit both housing discrimination and school desegregation claims.

The School Board's motion is based on Rule 21, which grants discretion to the Court to sever a claim or party which has been misjoined. The standards for joinder of defendants are provided by Fed.R.Civ.P. 20(a), as follows:

"All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against

---

1. The City and the CDA submitted a brief in support of the Board's Motion to Sever, in which it is asserted that "there has been improper joinder of the Board of Education with the City and the CDA...." Memorandum of City and CDA in support of Motion to Sever at 7. Our disposition of this motion is not altered by treating the City as well as the CDA as a movant with respect to the Motion to Sever.

2. As noted, the School Board moved to sever only the CDA, while the brief filed by the City and the CDA urged severance of both the City and the CDA.

one or more defendants according to their respective liabilities."

■ Thus, the motion to sever should be denied if plaintiff's claims against the School Board, the City and the CDA (1) relate or arise out of the same transaction or occurrence or series of transactions or occurrences and (2) if a question of law or fact common to all defendants will arise.[3] "There is no rigid rule as to what constitutes the same series of transactions or occurrences for purposes of joinder under Rule 20." *Vulcan Society of Westchester v. Fire Department of the City of White Plains, supra* note 3 at 387 (citation omitted). Moreover, Rule 20 should be interpreted to encourage "the broadest possible scope of action consistent with fairness to the parties . . . .", *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, and to prevent multiple lawsuits. *See League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977); *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332–33 (8th Cir. 1974). Rule 20(a) has been described variously as requiring a logical or reasonable relationship, *Mosley v. General Motors Corp., supra* at 1333; or simply "enough ultimate factual concurrences that it would be fair to the parties to require them to defend jointly," *Hall v. E. I. Du Pont De Nemours & Co.*, 345 F.Supp. 353, 381 (E.D.N.Y.1972) (*quoting Eastern Fireproofing Co., Inc. v. United States Gypsum Co.*, 160 F.Supp. 580, 581 (D.Mass.1958) ). *See generally, e. g., C.A.B. v. Carefree Travel, Inc., supra* note 3, 513 F.2d at 384 (joinder proper where "[t]he operative facts are related, even if the same transaction is not involved"); *Nassau County Association of Insurance Agents, Inc. v. Aetna Life &*

*Casualty Co.*, 497 F.2d 1151, 1154 (2d Cir.) (thousands of unrelated transactions did not provide basis for joinder absent allegation of any connection between practices of 164 defendants) *cert. denied* 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974). Under either version of the Rule 20(a) requirement, we find it satisfied here.

Plaintiff has alleged that the City, through the School Board and the CDA, has implemented a racially discriminatory policy. The allegations in the complaint against the School Board, the City, and the CDA and their interrelated activities are logically related and constitute a series of transactions or occurrences within the meaning of Rule 20(a). *See Poindexter v. Louisiana Financial Assistance Commission*, 258 F.Supp. 158, 166–67 (E.D.La.1966) *aff'd* 393 U.S. 17, 89 S.Ct. 48, 21 L.Ed.2d 16 (1968). In addition, questions of law and fact common to all defendants will arise in this action. Examples of common factual questions include the interrelationship, in terms of control and coordination, of the three defendants, and whether there has been intentional action by these defendants. A common legal question is whether, and by what means, such intent must be shown. We therefore conclude that the requirements and underlying purposes of Rule 20(a) have been satisfied.

The School Board does not propose a different Rule 20(a) analysis.[4] Rather, the School Board appears to seek a severance primarily because of its view that school desegregation and housing discrimination claims may not be brought in one action. It is on this basis that the School Board invokes the Court's discretion to sever under

---

**3.** The City and the CDA have overstated the second requirement in their contention that there must be at least one claim which is made against all of the defendants in the action. Although Rule 20(a) requires a question of law or fact common to all defendants, it does not require that the common question be the basis for an identical *claim* against each defendant. *See C.A.B. v. Carefree Travel, Inc.*, 513 F.2d 375, 384 (2d Cir. 1975); *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333, 1334 (8th Cir. 1974); *Kedra v. City of Philadelphia*, 454

F.Supp. 652, 661 (E.D.Pa.1978); 3A Moore's Federal Practice § 20.06 at 20–46 (2d ed. 1979). *Cf. Vulcan Society of Westchester County v. Fire Department of the City of White Plains*, 82 F.R.D. 379, 390 (S.D.N.Y.1979) (denying motion to sever where plaintiff challenged "interrelated" Civil Service exams).

**4.** The City and the CDA do offer an alternative Rule 20(a) analysis, which we find without merit. *See* note 3, supra.

Rule 21. As noted, the School Board relies on language in *Swann v. Charlotte Meck-lenburg Board of Education,* 402 U.S. 1, 22–23, 91 S.Ct. 1267, 1279, 28 L.Ed.2d 554 (1971) and *Hart v. Community School Board,* 512 F.2d 37, 41 (2d Cir. 1975), to the effect that "one vehicle can carry only a limited amount of baggage." The School Board also argues that its responsibilities are distinct from those of the CDA and that therefore, they should not be joined, with the resulting increase in discovery costs due to the necessity of attending discovery sessions applying to the other agency only.

The United States responds that this is not a case in which an action brought solely against a school board is sought to be expanded to encompass other community problems. We agree. Here, the complaint, the allegations of which we must accept for the purposes of this motion, alleges in the first instance that the actions of the City, the School Board and the CDA have had the total and combined effect of causing and perpetuating racial segregation. According to the complaint, the School Board and the CDA are agencies of the City and cannot be viewed as unrelated. The defendants contend that the School Board is a State, rather than a City agency, but it is not contested that the City appoints all of the School Board members and that the City provides funding to the schools. Thus, with respect to plaintiff's contention that the City exercises at least some control over the School Board as well as the CDA, a factual question has been presented which cannot be resolved at this stage of the proceedings, and the instant motion will therefore be denied.[5]

We note, with respect to the motion to sever, that although the Board emphasizes the language in *Swann* urging that school desegregation cases not be burdened with all of the ills of the society, significantly in *Swann,* after recognizing the interrelationship between discriminatory construction of housing and school segregation, 402 U.S. at 20–21, 91 S.Ct. at 1278, the Court stated: "We do not reach in this case the question whether a showing that school segregation is a consequence of other types of state action, without any discriminatory action by the school authorities, is a constitutional violation requiring remedial action by a school desegregation decree." *Id.* at 23, 91 S.Ct. at 1279. Here, if the allegations of the complaint are accepted, school segregation is a consequence of both discriminatory action by school authorities and other discriminatory actions taken by another city agency, all with a view to perpetuating a segregated school system. *See Arthur v. Nyquist,* 415 F.Supp. 904, 961–69 (W.D.N.Y. 1976), *aff'd in part, rev'd in part on other grnds,* 573 F.2d 134, 145 n.22 (2d Cir. 1978), *cert. denied* 439 U.S. 860, 99 S.Ct. 179, 58 L.Ed.2d 169 (1978).

It is one thing to seek to engraft into a school desegregation case extraneous con-

---

**5.** The City asserts a similar claim as a ground for dismissing plaintiff's Title IV claim, contained in paragraph 19 of the complaint:

"the complaint's allegations fail as a matter of law to allege sufficient control over management of educational affairs by the City to satisfy Title VI. The complaint only alleges control over budgetary matters; it fails to allege *any* City control over educational affairs, student assignment, or school administration. Control over the budget, without more, is insufficient. The Board of Education is a separate and autonomous entity under New York law, and is subject as a matter of state law, to the control of the New York State Board of Regents, and not the City. As a result, the City cannot be held *liable* for the acts of the Board of Education, since it has no power or authority to influence educational affairs." Reply Memoran-

dum of City and CDA at 8 (emphasis in original).

However, paragraph 4 of the complaint, the allegations of which must for these purposes be accepted as true, alleges that the City exercises control over the School Board to the comprehensive extent set forth in that paragraph, including not only budget expenditure, construction, purchase and sale of real property, but the appointment by the Mayor of the City of all of the members of the School Board. Whether or not the defendant City exercises such control over the School Board so that it may be liable for the actions of that body, or be subject to this suit because of actions taken or omitted by the Board, presents a factual question with respect to the extent of control over the Board which cannot be resolved by the motion to dismiss. This motion is denied.

cerns or to seek to join non-educational agencies in the remedial aspects of a school desegregation case involving a single school, *see Hart, supra*; it is another thing to say, as the Board appears to do, that housing and school segregation are so inherently distinct and unrelated that two city agencies, each with primary responsibility for either schooling or housing, cannot be joined together with the City which controls the appointment, financing or other significant aspects of the functioning of those agencies, in a single proceeding. We find the latter contention without merit in the present context of this litigation. Of course, any determination of the merits of plaintiff's allegations must await the completion of discovery and either motions for summary judgment if there are no material factual disputes, or a trial if there are material factual disputes.

Emphasizing again the preliminary procedural stage of this litigation, the motion to sever is denied without prejudice, as is true with respect to all motions to sever, to renewal if at a later stage in the proceedings, after discovery and further development of the contentions of the parties, such relief appears appropriate.

*Motion to Dismiss with respect to Title VIII of the Civil Rights Act of 1968*

Defendants City of Yonkers and CDA move to dismiss the allegations of Title VIII, 42 U.S.C. §§ 3601–3619, on the grounds that the United States has failed to state a claim against them on the face of the complaint. The complaint alleges:

"22. Defendant Community Development Agency (formerly Yonkers Urban Renewal Agency) is the coordinating agency for all urban renewal programs in the City of Yonkers. It has broad powers to plan, undertake and effectuate urban renewal projects, including, *inter alia*, the power to purchase property, construct buildings and contract for federal subsidies. It has coordinated the planning and construction of most of the subsidized housing projects in the City of Yonkers, including, but not limited to:

| PROJECT | YEAR OPENED |
| --- | --- |
| 10 Orchard Street | 1971 |
| 164–170 Buena Vista Avenue | 1971 |
| Messiah Baptist | 1972 |
| Waverly Arms | 1972 |
| Jackson Terrace | 1973 |
| Frazier Homes | 1973 |
| Warburton/Ashburton (Dorado) | 1973 |
| Whitney Young Houses | 1974 |
| Cromwell Towers | 1974 |
| Parkledge (Ramp) | 1975 |
| Riverview I | 1975 |
| Riverview II | 1975 |

23. The Yonkers City Council is responsible for approving all sites for construction of public and subsidized housing in the City of Yonkers, and has participated in the site selection process for every public and subsidized housing project in the City of Yonkers.

24. Defendants Yonkers Community Development Agency and City of Yonkers have intentionally followed a systematic pattern of selecting sites for public and subsidized housing projects that has effectively perpetuated and seriously aggravated residential segregation in the City of Yonkers, in violation of the Constitution and of Title VIII of the Civil Rights Act of 1968. As a direct result of the defendants' site selection policies, over 97% of all subsidized housing units and 100% of all subsidized family units constructed in Yonkers are located west of the Saw Mill River Parkway, in or immediately adjacent to residential areas of high minority concentration."

In support of their motion, defendants advance a number of contentions, each of which will be discussed briefly. First, defendants contend that the claim of alleged violation of Title VIII lacks specificity. The defendants allege that the complaint fails to "state the relationship between the occupants of the subsidized units and the classes sought to be protected by the Act." Memorandum of City of Yonkers and Yonkers CDA, at 32. Moreover, the defendants assert that "[i]n addition to its failure to

articulate how the location of subsidized housing units effects purported residential racial segregation in the City of Yonkers, the Complaint does not allege any facts to show that racial minorities do not, in fact, live east of the Saw Mill River Parkway or have been discriminated against in attempts to reside in that area of the City." *Id.* at 33.

We find that the complaint complies with Fed.R.Civ.P. 8(a) which provides for notice pleading. *See School District of Kansas City v. State of Missouri,* 460 F.Supp. 421, 443 (W.D.Mo.1978), *appeal dismissed* 592 F.2d 493 (8th Cir. 1979). We also find that paragraph 24 of the complaint quoted *supra,* sufficiently alleges the relationship between the occupants of the housing units and the classes protected by Title VIII, as well as the segregative effect of the site selections. *See United States v. School District of Ferndale,* 577 F.2d 1339, 1344 (6th Cir. 1978) ("The averments leave little question as to what the United States is complaining about and whose rights it is attempting to vindicate.") (citation omitted). This contention is without merit.

Next, the City and CDA, relying on *Wheatley Heights Neighborhood Coalition v. Jenna Resales,* 447 F.Supp. 838 (E.D.N.Y. 1978), contend that the plaintiff has failed to allege a causal connection between the acts of the defendants and the racial segregation challenged here. As we have noted, in paragraph 24 and elsewhere in the complaint, the United States has alleged a causal connection between the defendants' intentional acts and racial segregation in Yonkers. Moreover, defendants' reliance on *Wheatley Heights* is misplaced. In that case, Judge Neaher dismissed the complaint after substantial discovery on the ground that, on the undisputed facts, a causal nexus between the actions of the defendant and racial steering had not been established. Id. at 841, 844. However, an earlier summary judgment motion had been denied as "premature because it could not then be said that plaintiffs would be unable, through discovery, to adduce facts requiring imposition of liability on [the defendant]."

Id. at 839. In this case, discovery has not been completed and the facts are not undisputed. Defendants' contention with respect to causal connection is likewise premature and without merit at this stage of the litigation.

Next the City and CDA contend that the acts alleged in the complaint do not constitute an unlawful housing practice under Title VIII, "[n]or does the complaint charge that the City and CDA are presently planning or going forward with any public or subsidized housing projects located in areas of high minority concentration." Memorandum at 38. The parties disagree with respect to the scope of Title VIII, and with respect to whether the alleged actions or failures to act of the City and CDA violated Title VIII. This dispute should be resolved in the particular factual context of this case, as it will be developed through discovery. We therefore reject this contention as prematurely raised.

Next, the City and CDA contend that "[t]he Fair Housing Act does not impose any duty upon a Governmental body to construct or to 'plan for, approve and promote' any housing", *Acevedo v. Nassau County,* 500 F.2d 1078, 1082 (2d Cir. 1974), and that the allegations of the complaint conflict with this principle. The United States responds that the primary thrust of its complaint is "that a pattern and practice of intentionally segregative site selection decisions carried forward over a substantial period of time constitutes a violation of [Title VIII]," and that it seeks imposition of affirmative duties on the defendants as a remedy for such a violation. The United States also notes that several courts, *e. g., Otero v. New York City Housing Authority,* 484 F.2d 1122 (2d Cir. 1973), have imposed "specific affirmative responsibilities on municipalities and local housing authorities." Brief in Opposition at 26. Again, it is not appropriate to resolve this dispute, or the myriad of issues raised in the extensive case law, until the facts of this case and the contentions of the parties with respect to those facts have been developed and clarified through discovery.

■ Next, in a supplemental memorandum in support of the motion, defendants urge in further support of the motion to dismiss that the complaint does not allege a present violation or the perpetuation of pre-Act violations of Title VIII and that an analysis of the Federal Housing Programs demonstrates that under no set of facts could defendants be responsible for the alleged violations of Title VIII. In support of this last contention, the defendants review the nature of housing constructed pursuant to § 236 of the National Housing Act, as amended, 12 U.S.C. § 1715z–1, and the responsibility of various governmental bodies including federal housing agencies for the selection of sites and implementation of § 236 housing. We reject these contentions because paragraphs 22–25 of the complaint sufficiently allege a present violation of the Act and perpetuation of pre-Act violations, and because we cannot at this juncture resolve either the factual issues raised by the inter-relationship of federal and local agencies in the construction of subsidized housing or the defenses arising therefrom. *See Arthur v. Starrett City Associates*, 89 F.R.D. 542 (E.D.N.Y.1981). We are not prepared to declare that a local entity can never be sued under Title VIII. *See, e. g., Otero v. New York City Housing Authority, supra.*

For the reasons just stated, the City and CDA's motion to dismiss is denied, without prejudice to renewal after completion of discovery.

### The School Board's Motion to Dismiss Paragraph 17(g)

The School Board moves to dismiss paragraph 17(g) of the complaint which reads as follows:

"17. Specific racially discriminatory practices of the School Board which have resulted in the unlawful segregation of students by race, include, but are not limited to, the following: ... (g) the denial of equal educational opportunity to minority students through

(i) their assignment to schools having generally poorer facilities and curiculae and less experienced teachers than schools attended mostly by white students; and

(ii) the School Board's historical operating hypothesis that minority students are not capable of performing at the level of white students."

This motion is based on the Board's contention that the phrase "equal educational opportunity" is derived from the Equal Educational Opportunity Act of 1974 (EEOA), 20 U.S.C. § 1701 *et seq.*, and that the practices alleged in paragraph 17(g) of the complaint are not declared unlawful in § 1703 of the EEOA. However, this action is brought under the Civil Rights Act of 1964, not the EEOA. The phrase "equal educational opportunity" does not appear to be used in the complaint as a technical term or as a term of art. The EEOA specifically provides that it is not intended to modify or diminish the authority of the "Courts of the United States to enforce fully the ... Fourteenth Amendment". 20 U.S.C. § 1702(b). The motion to dismiss paragraph 17(g), more appropriately designated a motion to strike that allegation of the complaint, is denied.

### Motion to Dismiss Paragraph 17(h)

■ Paragraph 17 of the complaint contains another subparagraph which the Board moves to dismiss or to strike. That paragraph relates to the School Board's alleged failure to adopt the desegregation aspects of a reorganization plan proposed in 1977 which had incorporated recommendations of a Board appointed citizens' task force and of State Education Officials. The Board contends that this allegation conflicts with the determination of the Supreme Court in *Dayton Board of Education v. Brinkman*, 433 U.S. 406, 414, 97 S.Ct. 2766, 2772, 53 L.Ed.2d 851 (1977) (*quoting Brinkman v. Gilligan*, 503 F.2d 684, 697 (6th Cir. 1974)) that:

"The question of whether a rescission of previous board action is in and of itself a violation of appellants' constitutional rights is inextricably bound up with the question of whether the Board was under a constitutional duty to take the action which it initially took. ... If the Board

was not under such a duty, then the rescission of the initial action in and of itself cannot be a constitutional violation. If the Board was under such a duty, then the rescission becomes a part of the cumulative violation, and it is not necessary to ascertain whether the rescission *ipso facto* is an independent violation of the Constitution."

Plaintiff does not contend that the School Board's failure to adopt the proposed reorganization plan amounted to a constitutional violation "in and of itself". Rather, the complaint, in paragraphs 17(a)–(h), alleges various racially discriminatory practices, of which the failure to adopt the reorganization plan is one example. Nor can it be determined at this stage of the litigation whether or not the School Board was under a constitutional duty to act. Thus, the holding in *Dayton* that the remedy imposed by the Court of Appeals for the Sixth Circuit was entirely out of proportion to the constitutional violations found by the district court, *see* 433 U.S. at 418, 97 S.Ct. at 2774, does not support the contention that, in a different factual context, failure to adopt a recommended plan may not be relevant to whether the Board engaged in "specific racially discriminatory practices ... which have resulted in the unlawful segregation of the students by race ..." as alleged in paragraph 17 of the complaint. The failure to adopt the proposed plan may also be probative of the Board's discriminatory intent. *See Columbus Board of Ed. v. Penick*, 443 U.S. 449, 463 n.12, 99 S.Ct. 2941, 2949 n.12, 61 L.Ed.2d 666 (1979); *Parent Association of Andrew Jackson High School v. Ambach*, 598 F.2d 705, 713 ("official acts in their setting can provide circumstantial evidence of intent").

Moreover, the Board's motion seeks to lift the allegations of paragraph 17(h) out of the context of the complaint as a whole, as if it, standing alone, were required to constitute an independent cause of action. We do not understand this to be its purport within the context of this complaint and the motion that it be stricken or dismissed is denied.

*Motion to Strike Paragraph 17(g)(ii)*

The Board moved also to strike paragraph 17(g) of the complaint on the ground that the allegation that it was "the School Board's historical operating hypothesis that minority students are not capable of performing at the level of white students" violates the First Amendment's preclusion of sanctions by the Government solely because of a person's beliefs.

The motion in this regard is frivolous. Obviously, the action is not concerned with the beliefs of individual members of the School Board, except to the extent to which the Board members are alleged to have acted or failed to act to the detriment of minority students. *See Arthur v. Nyquist*, 573 F.2d 134, 142 (2d Cir.) *cert. denied* 439 U.S. 860, 99 S.Ct. 179, 58 L.Ed.2d 169 (1978). The challenged allegation must be read in the context of a complaint which alleges elsewhere (paragraph 19(b)) that the City of Yonkers has appointed to the School Board since 1975 "individuals opposed to the desegregation of the Yonkers Public Schools". In no sense can the allegations of the complaint be fairly construed to seek a remedy because of the individual unimplemented views of any persons. Moreover, the complaint alleges intentional action by the School Board, an allegation to which a historical operating hypothesis or assumption, if proved, would be relevant. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–68, 97 S.Ct. 555, 562–65, 50 L.Ed.2d 450 (1977); *United States v. City of Parma, Ohio*, 494 F.Supp. 1049, 1054 (N.D.Ohio), *appeal dismissed* 633 F.2d 218 (6th Cir. 1980).

*Miscellaneous Other Motions*

Motions to strike other allegations of the complaint are of a like character to those discussed above and are denied. Motions to strike are generally disfavored. *FRA S.p.A. v. Surg-O-Flex of America, Inc.*, 415 F.Supp. 421, 427 (S.D.N.Y.1976); 5 C. Wright and A. Miller, Federal Practice and Procedure, § 1381, at 799 (1969). *See also* 2A Moore's Federal Practice, § 12.21[2] ("Matter will not be stricken unless it is clear that it can have no possible bearing

upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied.").

Nor does the Court perceive any grounds to require a more definite statement by the plaintiff pursuant to Fed.R.Civ.P. 12(e). The complaint is not "so vague or ambiguous that [the defendants] cannot reasonably be required to frame a responsive pleading," Fed.R.Civ.P. 12(e), and the motion for a more definite statement will not be granted "merely to require evidentiary detail normally the subject of discovery." *School District of Kansas City v. State of Missouri, supra* 460 F.Supp. at 443 (citation omitted).

The motion to require a statement of separate claims and separate counts pursuant to Fed.R.Civ.P. 10 misperceives the theory upon which the United States is proceeding. We understand that theory to be, not that there are separate causes of action which have been joined in a single complaint, but that the actions taken by the City of Yonkers and the two agencies over which it exercises significant control have together operated to cause the violations which this suit seeks to remedy. These motions are denied.

■ Defendants have moved to dismiss the Attorney General's claims brought under the Fourteenth Amendment on the ground that the Attorney General is not authorized and does not have standing to sue under the Constitution. The United States responds that Title IV of the Civil Rights Act of 1964 provides such standing. Although this is a hotly debated issue, *see, e. g., United States v. Philadelphia,* 644 F.2d 187, 189–203 (3d Cir. 1980); *id.* at 213–28 (Aldisert, J., dissenting from order denying rehearing) (February 19, 1981); *Halderman v. Pennhurst State School & Hospital,* 612 F.2d 84, 90–92 (3d Cir. 1979) (en banc), *rev'd on other grnds,* —— U.S. ——, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *United States v. Mattson,* 600 F.2d 1295 (9th Cir. 1979); *United States v. School District of Fern-*

*dale,* 577 F.2d 1339, 1345–46 & n.12 (6th Cir. 1978); *United States v. Solomon,* 563 F.2d 1121 (4th Cir. 1977); *United States v. Brand Jewelers, Inc.,* 318 F.Supp. 1293 (S.D.N.Y. 1970), we need not reach it in this case. Here, the defendants' motion is predicated on the absence from the litigation of a non-governmental plaintiff, a contention which, even if it were sufficient to require dismissal of the Fourteenth Amendment claims, has been mooted by our grant of the motion to intervene.[6]

The City of Yonkers and the CDA also contend that the Attorney General has not complied with the pre-requisites under Title VI to bring suit against the City, although paragraph 1 of the complaint recites that the action is brought to enforce the provisions of various statutes including Title VI of the Civil Rights Act of 1964. The United States responds to this aspect of the motion by asserting ". . . the City's argument regarding Title VI of the Civil Rights Act of 1964 is irrelevant, since the complaint does not allege that the City violated Title VI." Response of the United States in Opposition, at 3. Indeed the allegations with respect to Title VI (Complaint, ¶¶ 9, 10, 13) all relate to alleged assurances of compliance with the provisions of Title VI by the School Board and the determination by the Attorney General that the School Board is operating in violation of Title VI and would not comply voluntarily with the provisions thereof. Since the complaint does not allege that either the City or the CDA violated Title VI, the motions by those defendants directed to alleged insufficiencies in the assertion of Title VI claims against the City must perforce be denied.

*Motion for Intervention*

■■ A motion to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2) or, alternatively, to intervene permissively pursuant to Fed.R.Civ.P. 24(b)(2) has been filed by the Yonkers Branch of the NAACP and Regina Ryer, a minor by her next friend, Charlotte Ryer, on behalf of themselves and

---

**6.** The defendants' motion was brought prior to the motion to intervene. At page 9 of the Memorandum of the City and CDA, it was stated: "No member of the public, however, has joined or intervened in this suit as a private

plaintiff seeking to enforce his own constitutional or statutory rights." The School Board joined in this motion, also prior to the filing of the motion to intervene.

all similarly situated black and minority children and families. The United States opposes intervention as of right, but supports permissive intervention. The defendants oppose both types of intervention. We do not reach the question whether intervention as of right should be granted because we find, in the exercise of our discretion, that permissive intervention is warranted.

Applications for permissive intervention are governed by Rule 24(b),[7] which places resolution of motions for permissive intervention in the discretion of the Court,[8] guided by three considerations: (1) whether the application is timely;[9] (2) whether the intervenors present "a question of law or fact in common" with the main action; and (3) "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."[10] *See United States v. Columbia Pictures Industries, Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y.1980).

The intervenors' application has been timely filed at an early stage of the proceedings by and on behalf of people directly interested in the litigation.[11] It is beyond dispute that the intervenors' proposed complaint contains claims having questions of law and fact in common with the main action. The opposition to intervention focuses on "undue delay and prejudice to the original parties." The defendants contend that the intervenors' class action allegations and their claims under state law will unduly expand the scope of the action to the prejudice of the defendants, that the intervenors' participation will not contribute to the development of the facts, that the United States adequately represents the intervenors' interests,[12] that the intervenors will suffer no harm if intervention is denied because they can bring a separate action,[13] and that discovery proceedings will be more difficult to schedule due to the increase in the number of parties.

We have considered the defendants' arguments and find that no undue delay or

---

**7.** Rule 24(b) provides in relevant part:
"Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

**8.** *United States Postal Service v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978) ("Permissive intervention is wholly discretionary with the trial court. . . . The trial court's discretion is very broad.").

**9.** *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973).

**10.** *United States Postal Service v. Brennan, supra*, 579 F.2d at 191 (undue delay or prejudice to original parties is "principal consideration") (noting other considerations).

**11.** The School Board contends that the NAACP "lacks standing to maintain an action on its own behalf." School Board Response to Motion to Intervene at 1. The NAACP is seeking intervention on behalf of its members, and in conjunction with its representation of an individual class action plaintiff who clearly has standing to bring a proceeding. While it is therefore not of great practical significance to this suit whether the NAACP has standing, we conclude that it does. *Tasby v. Estes*, 572 F.2d 1010, 1012 n.12 (5th Cir. 1978) (rejecting challenge to NAACP standing and affirming grant of intervention motion by NAACP on behalf of its members and members' children and three named school children) *cert. dismissed* 444 U.S. 437, 100 S.Ct. 716, 62 L.Ed.2d 626 (1980). *See generally Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *NAACP v. Button*, 371 U.S. 415, 443, 83 S.Ct. 328, 343, 9 L.Ed.2d 405 (1963). We also note that the NAACP has represented plaintiffs in numerous desegregation suits. *See* cases cited in Applicant's Brief in Support of Motion to Intervene at 4 n.2.

**12.** Adequacy of representation by the United States, although one factor to be considered, *United States Postal Service v. Brennan, supra*, 479 F.2d at 191, is, in this context, "a minor factor." *United States v. Columbia Pictures, supra*, 88 F.R.D. at 189 (footnote omitted). In any event, we agree with the Government's assertion that the intervenors' "perspective, ideas, experience could only add as to resolution of this matter." Tr. of Argument, April 28, 1981 at 17, and conclude that representation of intervenors' perspective by their own counsel is appropriate.

**13.** "This argument is meritless. The proper inquiry is whether intervention would prejudice the rights of existing parties, not whether a denial of intervention would prejudice the proposed intervenor." *Weisman v. Darneille*, 89

prejudice to the defendants will result from intervention. The intervenors do not propose to alter the basic factual context of the original action, and the additional legal claims asserted by them based on those facts will be most economically resolved in this action, rather than in a separate action.[14] Moreover, we are unpersuaded that counsel acting in good faith would be unable to schedule discovery proceedings, or that any other undue delay or prejudice would result from the granting of intervenors' application.

It is, of course, impossible to determine definitively at this point whether the immediate participation of the intervenors will in the long run expedite or impede either the progress of the litigation or the efforts at settlement. No settlement agreement has yet been reached. The Court has strongly encouraged the parties to attempt to resolve this litigation by agreement and we have been advised that efforts in that direction have been made and are continuing. At the defendants' insistence, a representative of the NAACP has not been present at such settlement discussions but the United States has advised us that it has undertaken to keep the intervenors fully advised as to the status of settlement discussions. No matter who attends which meetings, the position of the NAACP and of the minority residents of Yonkers for whom they purport to speak, with respect to any proposed disposition of this litigation, is something which the Court would ultimately have to take into consideration. We agree with the applicants for intervention that it is more appropriate for them to intervene in this action at this stage and their motion is granted.

For the reasons stated herein, the motions to dismiss are denied, and the motion to intervene is granted. The defendants are directed to answer the plaintiff's complaint within 20 days, and to answer or move with respect to the intervenors' complaint within 20 days.

Settle order on notice by July 15, 1981.

---

F.R.D. 47, 52 (S.D.N.Y.1980). Moreover, commencement of a separate action which would most likely be consolidated with this action would not promote judicial economy.

**14.** The intervenors have stated their intention to file a separate action if their application is denied. Were such a proceeding to be filed in this Court, it would, under the rules applicable to all actions filed here, be treated as a case related to the instant proceeding and in all likelihood would be consolidated with this proceeding. In response to this observation, the defendants contend that there would be a difference between a consolidation of two related actions, and intervention in a single proceeding. Whatever difference there may be, and whatever arguments could be made or availed of in one circumstance, but not the other, are not pinpointed with any precision. In any event, any differences between the parties and their respective rights will be noted by the Court when appropriate. In effect, granting intervenors' application merely eliminates the consolidation process.

We also note that intervention in this case is not comparable to intervention in an SEC injunctive proceeding by private class action plaintiffs who seek damages. *See SEC v. Everest Management Corp.,* 475 F.2d 1236, 1240 (2d Cir. 1972) (affirming exercise of district court's "broad discretion" to deny intervention which would have an adverse effect on SEC enforcement) (noting that intervention by private party in SEC enforcement action might be appropriate in a different case). *See also Commodity Futures Trading Commission v. Carter, Rogers and Whitehead & Co.,* 497 F.Supp. 450, 453 (E.D.N.Y.1980).