UNITED STATES of America, Plaintiff,

v.

COLUMBIA PICTURES INDUSTRIES, INC.; Getty Oil Company; MCA, Inc.; Paramount Pictures Corporation; and Twentieth Century–Fox Film Corporation, Defendants.

No. 80 Civ. 4438 (GLG).

United States District Court, S. D. New York.

Sept. 26, 1980.

U. S. Dept. of Justice, Antitrust Division, Washington, D. C., for plaintiff; Seymour H. Dussman, Gordon G. Stoner, Karen Magid, Elisabeth P. Hyde, Stanley M. Gorinson, Robert E. Hauberg, Jr., Washington, D. C., of counsel.

Simpson, Thacher & Bartlett, New York City, for defendant Paramount Pictures Corp.; Roy L. Reardon, Charles E. Koob, Nicholas M. Cannella, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for defendant Columbia Pictures Industries, Inc.; Ira Millstein, Alan J. Wienschel, Henry J. Tashman, New York City, of counsel.

Dechert, Price & Rhoades, Philadelphia, Pa., for defendant Getty Oil Company; H. Francis De Lone, Robert A. Cohen, Philadelphia, Pa., of counsel.

Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for defendant MCA, Inc.; Alan Susman, William Billick, Beverly Hills, Cal., of counsel.

Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant Twentieth Century–Fox Film Corp.; James Patrick Clark, Julian O. Von Kalinowski, Los Angeles, Cal., of counsel.

Munger, Tolles & Rickershauser, Los Angeles, Cal., for intervenor Premiere; Ronald L. Olson, Jeffrey I. Weinberger, Harold A. Barza, Bradley S. Phillips, Los Angeles, Cal., of counsel.

Cravath, Swaine & Moore, New York City, for nonparties Home Box Office, Inc. and related Time Incorporated companies; Robert D. Joffe, Jeffrey F. Facter, Lawrence E. Fenster, Peter J. Ferrara, New York City, of counsel.

Hughes, Hubbard & Reed, New York City, and Shea & Gould, New York City, attorneys for nonparties Showtime, Viacom and Teleprompter; John A. Donovan, New York City, Peter M. Kreindler, Ronald A. Stern, Marcy J. Tiffany, Washington, D. C., Michael Lesch, Steven E. Levitsky, and Ronald Lightstone, Viacom International Inc., Barry P. Simon, Teleprompter Corporation, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for nonparties Warner Amex Satellite Entertainment Corp.; Merrell E. Clark, Jr., John B. Daniels, Stuart M. Reynolds, Jr., David G. Keyko, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

In this antitrust action brought by the United States Department of Justice against four major film companies and Getty Oil Company seeking to enjoin those defendants from pursuing their joint venture of establishing Premiere, a company intended to provide a new pay television programming service, Premiere has moved to intervene, and three nonparty witnesses have objected to defendants' nonparty discovery demands.

### The Action

The main action can be outlined as follows: On April 12, 1980, Columbia Pictures, Inc., MCA, Inc., Paramount Pictures Corporation, Twentieth Century–Fox Corporation, and Getty Oil Company signed an agreement forming Premiere as a "noncorporate joint venture . . . for the purpose of establishing and operating a new Network Program Service devoted exclusively to the exhibition of Motion Pictures" on pay television. On August 4, 1980, the Antitrust Division of the Department of Justice ("Government") brought suit against the five joint venturers, charging that certain provisions of their agreement amounted to antitrust violations–specifically, price–fixing and a group boycott–under section 1 of the Sherman Act, 15 U.S.C. § 1 (1976). On August 15, 1980, the Government filed a motion for a preliminary injunction.

Meanwhile, on August 14, 1980, Premiere filed its motion for leave to intervene in the action pursuant to Fed.R.Civ.P. 24. Three other nonparties–pay cable network programming companies currently operating in the industry–entered the picture in late August by notifying the Court of their objections to defendants' subpoenas and, in mid–September, filing formal objections to those subpoenas.

### Intervention

Premiere's motion to intervene presents the Court with an unusual situation, chiefly because Premiere is attempting to intervene as a defendant in this government antitrust action. No case involving intervention as a defendant in an antitrust suit has been brought to the attention of the Court. On the other hand, intervention as a defendant has been sought and allowed in a few cases of other types. *See, e. g., Natural Resources Defense Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977); *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York*, 516 F.2d 350 (2d Cir. 1975); *Town of North Hempstead v. Village of North Hills*, 80 F.R.D. 714 (E.D.N.Y.1978); *New England Petroleum Corp. v. Federal Energy Administration*, 71 F.R.D. 454 (S.D. N.Y.1976). Premiere's desire to intervene in the instant action obviously results from the knowledge that its existence depends upon the outcome of the antitrust suit. The opposition to Premiere's intervention comes from the Government. Finding no sufficient reason to deny Premiere's application, the Court hereby grants the motion for leave to intervene.

Under the Federal Rules of Civil Procedure, intervention may be granted as of right or as a matter of discretion. Rule 24(a)(2) [1] lists four requirements for intervention as of right: (1) "timely application"; (2) "an interest relating to the property or transaction which is the subject matter of the action"; (3) a position in which "the disposition of the action may . . . impair or impede [the applicant's] ability to protect that interest"; (4) inadequate representation of "the applicant's interest . . . by existing parties." Although the Government challenges Premiere's right to intervene on grounds that Premiere fails to meet the second and fourth requirements, the thrust of its opposition to the interven-

---

1. Rule 24(a)(2) provides:

    Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

tion is its contention that Premiere's interest is already adequately represented by the five original defendants. It seems likely that Premiere could be found to have met its burden of demonstrating that its representation by existing parties "may be inadequate," since that burden " 'should be treated as minimal,' " *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972)), and since Premiere has identified some areas in which its interests, as well as its perspective and expertise, may differ from those of the joint venturers. This Court need not resolve that issue, however, given the availability of permissive intervention.

Rule 24(b)(2)[2] lists three requirements for permissive intervention: (1) "timely application"; (2) "a question of law or fact in common" between the "applicant's claim or defense and the main action"; (3) a determination that the intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." The Government's opposition to Premiere's intervention rests primarily on its assertion that Premiere's entry into the action would delay the proceedings and on a reiteration of its argument that Premiere's interest is already adequately represented.

■ Avoidance of delay or prejudice to the original parties is certainly the primary consideration of a court faced with an application for permissive intervention. *United States Postal Service v. Brennan, supra*, 579 F.2d at 191. The Government, however, fails to specify in what ways Premiere's entry into the action would cause delay or prejudice. Instead, it relies on the general proposition that any additional party will take additional time. In the chief case the Government cites for that proposition, *Cros-*

*by Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F.Supp. 972 (D.Mass.1943), the court, despite its cautionary words, did allow intervention. In the other cases the Government cites, where intervention was denied, the denial was based on some specific problem likely to cause delay or prejudice. *See, e. g., National American Corp. v. Federal Republic of Nigeria*, 425 F.Supp. 1365 (S.D.N.Y.1977) (multiplication of choice of law problems caused by allowing intervention). Here, in contrast, the opponent to intervention outlines no specific likelihood for delay or prejudice, and, indeed, it is possible that the proposed intervenor's expertise and perspective could speed the adjudication of the action as well as aid in shaping the judicial remedy. *See Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc., supra*, 51 F.Supp. at 974.

■ The Government's reliance on its contention that Premiere's interest is already adequately represented seems inappropriate in an application for permissive intervention. Rule 24(b) does not list inadequacy of representation as one of the considerations for the court. Although some cases mention it as one factor to be considered, *see, e. g., United States Postal Service v. Brennan, supra*, 579 F.2d at 191, it is clearly a minor factor at most.[3]

Permissive intervention is chiefly a matter committed to the broad discretion of the court. *Id.* at 192. This Court, in its discretion, finds that there is more to be gained than to be lost in permitting Premiere to intervene as a defendant in this action.

*Nonparty Discovery*

■ Defendants have sought very extensive discovery from nonparties who, they claim, dominate the pay television industry and the network program services currently

---

2. Rule 24(b)(2) provides in relevant part:

   Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention

will unduly delay or prejudice the adjudication of the rights of the original parties.

3. According to at least one court, demonstration of inadequacy of representation is not required at all for permissive intervention. *See Groves v. Insurance Company of North America*, 433 F.Supp. 877, 888 (E.D.Pa.1977).

operating in that industry.[4] The information sought involves market data, contractual agreements between programmers and cable systems, tiering,[5] the extent of vertical integration in the industry, barriers to entry into the market, the need for product differentiation, the demand for defendants' motion pictures on pay television, and the competitive injury caused by the entry of Premiere.

The Government and the nonparty witnesses object, in the main, to this discovery as being irrelevant. Moreover, the nonparty witnesses contend that the discovery demands will involve hundreds of thousands (if not millions) of documents and scores of witnesses.[6] All parties agree that it is essential that the Government's motion for a preliminary injunction be heard within the next couple of months and be decided before January 1, 1981, when the venture is scheduled to commence operations. In the opinion of the Court, the volume of discovery sought is so great that, even with extreme reduction and complete cooperation, it could not be substantially completed in less than a year.

The Government and the nonparty witnesses strongly argue that, in any event, all of the discovery is unnecessary in light of the fact that defendants' endeavor is a *per se* violation of the antitrust laws. Defendants respond that *per se* labels do not provide ready answers to antitrust questions and that the application of the *per se* rule must be based upon demonstrable economic effect in the marketplace. To this, the Government and the nonparty witnesses respond that the purpose of the *per se* rule is to create an irrebuttable presumption that forecloses factual inquiry into the purposes and effects of a combination in the marketplace. While this issue has been extensively briefed as part of the discovery motion, it is the threshold issue to be considered in the Government's motion for a preliminary injunction. Consequently, the Court declines to decide that issue at this time.

From a practical standpoint, allowing the discovery at this time, in addition to leaving an enormous burden on the nonparty witnesses, would mean that there is little likelihood of hearing and deciding the preliminary injunction motion this year. Moreover, the present discovery is being conducted solely for purposes of preparing for a preliminary injunction hearing. If the Court does not allow the discovery now and later concludes that defendants' threshold position is sound, then a ruling on the motion for a preliminary injunction may have to be (depending upon the equities and other considerations) postponed until additional discovery can be had.[7]

The Court's conclusion that the extensive discovery sought is not necessary prior to the preliminary injunction motion is buttressed by several additional considerations. Before the film company defendants formed their joint venture, they had extensive dealings with all of the nonparty witnesses. It was on the basis of these dealings that they formed the joint venture and argue that any ostensible restraints on trade are essential to entry into a tightly controlled and vertically integrated market. To compete with the nonparty witnesses, Premiere has hired a number of prominent former employees of the industry, who are personally familiar with all of the practices.

More important, before the Government commenced this suit, it served civil investi-

---

4. These companies are Home Box Office, Inc. (and its parent, Time Incorporated, and other affiliated companies), Showtime Entertainment (and its joint venturers, Viacom International, Inc. and Teleprompter Corporation), and Warner Amex Satellite Entertainment Corporation (and other related Warner companies and the American Express Company).

5. This term refers to carrying more than one pay program station on a cable network.

6. With respect to the burden involved, defendants respond that they are amenable to steps that could lessen the burden and limit the time and effort required of the witnesses, but they differ as to whether any meaningful economies can be achieved.

7. For purposes of the motion, plaintiff need only show a likelihood of success on the merits, not a certainty, to obtain a preliminary injunction. *United States v. Siemens Corp.*, 621 F.2d 499, 505 (2d Cir. 1980).

gation demands upon all of the nonparty witnesses, and the information given in response to those demands constitutes the core of the Government's case. There is no objection to the discovery of these documents, and they are being made available to defendants.[8]

Finally, all of the nonparty witnesses have agreed to a degree of additional discovery.[9] These unopposed specifications provide additional disclosure on other matters that could conceivably be at issue in the preliminary injunction motion.[10] Consequently, the Court believes that the additional discovery sought by defendants should be postponed until after the preliminary injunction motion has been heard. The Court will hear argument on that motion on November 21, 1980 at 10:00 A.M. Discovery must be completed and defendants' opposing papers must be submitted by November 17, 1980.

SO ORDERED.

**8.** The Government is, independently, investigating the nonparty witnesses, and there is a dispute concerning defendants' rights to obtain discovery of materials compiled by the Government.

**9.** *The additional discovery agreed to by the three nonparty witnesses is not uniform. While on argument of the motion, defendants indicated that they believed all of their positions amounted to about the same thing, the Court suspects that defendants will have* second thoughts in this regard and will desire from each company that which has been submitted by another. It is the intent of this decision that the discovery made by the three nonparty witnesses, in terms of scope, should be uniform. If disputes arise concerning such differences, they will be dealt with subsequently.

**10.** *E. g.*, on the effect that the Premiere joint venture would have on the existing market, tiering, *etc.*