**In re Ronald J. PARR, Alfred R. Parr, Bankrupts.**

**FLUSHING SAVINGS BANK, Plaintiff,**

**v.**

**Harvey L. GOLDSTEIN, as trustee in bankruptcy for Alfred R. Parr, and Ronald J. Parr, Defendants.**

**In re PARR MEADOWS RACING ASSOCIATION, INC., Debtor.**

**James BARR, as trustee in bankruptcy of Parr Meadows Racing Association, Inc., Debtor,**

**v.**

**Harvey L. GOLDSTEIN, as trustee in bankruptcy of Ronald J. Parr, Bankrupt.**

Bankruptcy Nos. 79–B–1643, 79–B–2205 and 879–02996–20.
Adv. No. 880–0361–20.

United States Bankruptcy Court, E. D. New York, at Westbury.

Feb. 22, 1982.

Skadden, Arps, Slate, Meagher & Flom, New York City, for Flushing Sav. Bank; William J. Rochelle, III, New York City, of counsel.

Hahn & Hessen, New York City, for Trustee James Barr; Kevin Charles Kelley, New York City, of counsel.

Harvey L. Goldstein, New York City, trustee for Ronald J. Parr and Alfred R. Parr.

**ROBERT JOHN HALL, Bankruptcy Judge.**

The Court has before it the motions of James Barr, Trustee in Bankruptcy of Parr Meadows Racing Association, Inc. ("Barr" and "the Association") for leave to intervene in the pending adversary proceeding commenced by the Flushing Savings Bank ("Flushing") against Ronald J. Parr ("Parr") and Harvey L. Goldstein ("Goldstein"), Trustee in Bankruptcy of Alfred R. Parr and Ronald J. Parr, to vacate the stay imposed by Rule 601 of the Federal Rules of Bankruptcy Procedure, Fed.R.Bankr.P. 601, and to stay the trial of that complaint pending the determination of Barr's pending complaint against Goldstein which seeks a reconveyance of the Parr Meadows Race Track ("the Track") from Parr's estate to

the Association's estate. Simultaneously, Flushing moves to intervene in the Barr-Goldstein proceeding and further moves to stay that proceeding pending the completion of a pending state court action involving related issues. With the battle lines so drawn, the Court rules that Barr may intervene as of right in the Flushing-Goldstein action, but the trial thereof will not be stayed; similarly, Flushing is granted permission to intervene in the Barr-Goldstein action, and the trial thereof will not be stayed.

The factual background of this case as alleged by the various parties may be summarized as follows: [1]

In August of 1976, Flushing and twenty-one other lenders loaned the Association $14 million to finance the construction of a quarterhorse race track in Suffolk County, New York in return for which the Association gave its note and a first mortgage on the property in question. As further security, the Parrs, who owned all of the stock in the Association, guaranteed the note and pledged the stock.

In May of 1977, the Association defaulted on the note. Thereafter, on October 17, 1977, the Association filed a petition in this Court for an arrangement under Chapter XI of the now repealed Bankruptcy Act which petition was dismissed on June 12, 1979. More or less simultaneously on June 12, 1979, Parr filed his own individual Chapter XI petition, again with this Court, and two days later caused the Association to transfer title to the Track to himself. In the interim, however, Flushing had obtained a state court judgment in the amount of over $16 million against the Parrs on their guarantee and claims a concomitant judicial lien on the Parrs' real property.

Thereafter, by leave of this Court, in August 1979, Flushing commenced an action in New York Supreme Court, Suffolk County against, among others, Parr and the Association seeking a declaration that the transfer of the Track from the Association

to Parr was fraudulent under New York law. This action, however, did not seek a reconveyance of the Track. Both sides cross-moved for summary judgment which motion was denied by the trial court. The Appellate Division, Second Department reversed on April 27, 1981 and granted summary judgment for Flushing. *See Flushing Savings Bank v. Parr*, 81 A.D.2d 655, 438 N.Y.S.2d 374 (2d Dep't 1981). The defendants' appeal therefrom was dismissed by the New York Court of Appeals on September 2, 1981 as not being a final order.

Meanwhile, on October 4, 1979, the Association filed a second petition for a reorganization with this Court, this time under Chapter 11 of the new Bankruptcy Code which case was converted to a Chapter 7 liquidation on April 7, 1980 with Barr appointed trustee. Moreover on the same day, Parr was adjudged a bankrupt and and Goldstein was appointed his trustee.

Thereafter, on June 5, 1980, Barr commenced an action in this Court against Goldstein seeking a reconveyance of the Track to the Association. Finally, on August 15, 1980, Flushing commenced an action against Goldstein in this Court seeking to vacate the Rule 601 stay that Flushing might foreclose its liens on the Track in state court.

Barr now moves to intervene and stay the Flushing-Goldstein action. Similarly, Flushing moves to intervene and stay the Barr-Goldstein action.

### I. Intervention by Barr

Rule 24(a) of the Federal Rules of Civil Procedure made applicable to these proceedings by virtue of Rule 724 of the Federal Rules of Bankruptcy Procedure, Fed.R. Bankr.P. 724, provides in pertinent part:

Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: . . .

(2) when the applicant claims an interest relating to the property or transaction

---

1. Inasmuch as many of these allegations have not yet been tried, the Court wants to make it clear that it is making no finding of fact at this time and is only summarizing the allegations to establish a framework in which to evaluate the instant motions.

which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. Fed.R.Civ.P. 24(a).

■ Thus, in order to intervene of right under Rule 24, an applicant must show that (1) he claims an interest relating to the property which is the subject of the action, (2) his ability to protect that interest may be impaired or impeded as a practical matter if he is not allowed to intervene, and (3) his interest is not adequately represented by the existing parties. *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978); *Commodity Futures Trading Commission v. Carter Rogers and Whitehead & Co.*, 497 F.Supp. 450, 451, 452 (E.D. N.Y.1980).

Barr's position is that he has an interest in the Track by virtue of his demand that it be reconveyed to the bankruptcy estate of which he is the trustee and from which it was fraudulently transferred; that if it is so reconveyed, any judgment liens based on judgments docketed against Parr which attached to the Track due to the conveyance could be avoided or subordinated; that due to Flushing's inequitable conduct, the Association was forced into bankruptcy justifying subordinating Flushing's mortgage lien; that if Barr is not allowed to intervene and the Rule 601 stay is unconditionally lifted, Flushing will be able to foreclose its liens, sell the Track and distribute the proceeds according to New York law under which there is no provision for the equitable sub-ordination of claims; and that these interests are not adequately represented by Goldstein whose position must necessarily be that the title to the Track is and should remain in him as trustee of Parr's estate and who represents a different set of creditors who may not have been similarly prejudiced by Flushing's actions.

In response, Flushing argues that neither Parr's nor the Association's estates have any equity in the Track; that that is the test for vacating a Rule 601 stay; that the alleged invalidity of the mortgage is no defense to that action but would be appropriately arguable in the state foreclosure action (assuming Barr's intervention therein); and therefore, that any interest Barr might claim in the Track would not be impaired or impeded by the denial of intervention in the Rule 601 action.

In summary, Flushing's response essentially argues that to allow Barr to intervene would serve no purpose other than to delay these proceedings inasmuch as Barr has no valid defense.[2]

■ Whether or not Barr has a valid defense to the Rule 601 action is yet to be determined. Moreover, the Court is hampered in evaluating this contention due to Barr's failure to file a proposed answer as required by Rule 24(c).[3] Suffice it to say, however, that Barr has alleged sufficient facts to justify his entitlement to file and defend an answer as a party in this proceeding.

■ First, a colorable claim of ownership is certainly a sufficient interest to justify Rule 24(a) relief.[4] *Atlantis Development*

---

**2.** Goldstein, on the other hand, welcomes Barr's intervention on the theory that, as an adverse claimant to the Track, Barr is a logically necessary party.

**3.** Rule 24(c) provides in pertinent part:

Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.

Fed.R.Civ.P. 24(c). The failure to attach such a proposed pleading, however, is not fatal to the motion to intervene and may be waived by a failure to object. *Klein v. Nu-Way Shoe Co.*, 136 F.2d 986, 989 (2d Cir. 1943); 3B *Moore's Federal Practice* ¶ 24.12[1] (2d ed. 1981). In the instant case, Flushing has so failed to object.

**4.** While a Chapter 7 trustee never formally acquires title to the property of his estate, *compare* section 70(a), 11 U.S.C. § 110(a) (repealed 1978) *with* 11 U.S.C. § 541 (Supp. IV 1980), his statutory duties constitute him tantamount to an owner. For example, he has the right and duty to demand the reconveyance of assets fraudulently transferred from his estate,

Corporation v. United States, 379 F.2d 818, 825–26 (5th Cir. 1967); *American Jerex Company v. Universal Aluminum Extrusions, Inc.*, 340 F.Supp. 524, 531 (E.D.N.Y. 1972); *In re Oceana International, Inc.*, 49 F.R.D. 329, 332 (S.D.N.Y.1969); *cf. Reedsburg Bank v. Appollo*, 508 F.2d 995 (7th Cir. 1975) (intervention in foreclosure action denied where intervenors claimed no rights in subject property.)

▋ In the instant case, Barr has commenced an action seeking the reconveyance of the Track. Whether he is entitled to that relief remains to be seen; suffice it to say, however, that the action is not frivolous.

Second, Flushing is seeking to foreclose and sell off the property in which Barr claims this interest. While it may be true that Barr could raise defenses in the state foreclosure action, it is certainly true that Flushing's action to vacate the Rule 601 stay is the first step looking towards the termination of Barr's interests in the Track. Furthermore, it may well be the case that Barr has defenses available to him under federal law that might be lost in a state foreclosure action. *Compare Prudence Realization Corporation v. Geist*, 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293 (1942); *In re Multiponics Incorporated*, 622 F.2d 709, 713 (5th Cir. 1980); *In re Mobile Steel Company*, 563 F.2d 692, 698–99 (5th Cir. 1977); *In re Lockwood*, 14 B.R. 374 (Bkrtcy. E.D.N.Y.1981) (appeal pending) *with Jo*

Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y.2d 112, 250 N.E.2d 214, 302 N.Y.S.2d 799 (1969). Consequently, a denial of the right to be heard now may well impair his ability to protect that interest later on.[5]

Finally inasmuch as they are adverse claimants to the Track, it is clear that Barr's interests are not adequately represented by Goldstein. *See Atlantis Development*, 379 F.2d at 824–26; *In re Oceana International, Inc.*, 49 F.R.D. 329, 333 (S.D. N.Y.1969); *In re David M. Hunt Construction Co.*, 3 B.R. 256, 260 (Bkrtcy.E.D.Pa. 1980).[6]

Accordingly, Barr is granted leave to intervene and is directed to serve his answer by March 15, 1982.

## II. Barr's stay.

▋ Barr also moves this Court to stay the trial of Flushing's action to vacate the Rule 601 stay pending the determination of the ownership of the Track.

The Court does not understand this request. Flushing is presently stayed from foreclosing on its liens. Accordingly, Barr's motion is in reality a request that the Court continue the stay. Inasmuch as Flushing presently has pending a complaint to vacate the stay in which Barr has now been allowed to intervene, the appropriate moment to press such arguments is at the trial of Flushing's action. *See* Fed.R.Bankr.P. 601(c).[7] *But see* note 5 *supra.*

---

liquidate such assets and recommend the subordination of claims were appropriate. 11 U.S.C. §§ 510, 541, 548, 704, 726.

**5.** Of course, upon Barr's filing of an answer, should Flushing find it defective, it is not foreclosed by this opinion from challenging its sufficiency or propriety in this Court.

**6.** Also, the more limited jurisdiction accorded this Court under the now repealed Bankruptcy Act, *see* 2 *Collier on Bankruptcy* ¶ 23.01 *et seq.* (14th ed. 1978), still applicable in these proceedings by virtue of section 403(a) of the Bankruptcy Reform Act of 1978, 92 Stat. 2549, 2683, colors as suspect Goldstein's ability to protect Barr's interests as fully as he might protect them himself. *Cf.* 28 U.S.C. § 1471(c) (Supp. III 1979); *American Jerex Company v. Universal Aluminum Extrusions, Inc.*, 340 F. Supp. 524, 531 (E.D.N.Y.1972).

**7.** Relief from stay. On the filing of a complaint seeking relief from a stay provided by this rule, the bankruptcy court shall, subject to the provisions of subdivision (d) of this rule, *set the trial for the earliest possible date, and it shall take precedence over all matters except older matters of the same character.* The court may, for cause shown, terminate, annul, modify, or condition such stay. A party seeking continuation of a stay against lien enforcement shall show that he is entitled thereto.
Fed.R.Bankr.P. 601(c) (emphasis added).
The Court also notes that although Flushing's complaint has been pending before this Court since August of 1980, this is due to Flushing's consent to repeated adjournments of the trial.

Barr's motion for a stay of the trial of Flushing's complaint is therefore denied.

### III. Intervention by Flushing

As indicated above, there is presently pending in this Court an adversary proceeding commenced by Barr as Trustee of the Association against Goldstein as Trustee of Parr which seeks the reconveyance of the Track from Parr's estate to the Association's estate upon the grounds that the transfer was fraudulent under both federal and New York law. *See* 11 U.S.C. §§ 544(b), 548 (Supp. IV 1980); N.Y.Debt. & Cred.Law §§ 273–276 (McKinney 1945). Goldstein's defense is predicated essentially on his status as a "hypothetical" judicial lien creditor, *see* section 70(c), 11 U.S.C. § 110(c) (repealed 1978), arguing that assuming, *arguendo*, that the Track had been fraudulently transferred, this status cuts off Barr's rights, sections 544(b) and 548 of the new Bankruptcy Code notwithstanding.

Flushing now moves to intervene in this action both as of right and permissively.

### A. Intervention as of Right

Flushing's position is that it obtained a judgment of over $16 million against Parr on his guarantee and docketed such prior to the filing of his Chapter XI petition; that consequently, when the Track was transferred from the Association to Parr, the lien of the judgment attached to the Track; that this constitutes a sufficient interest to justify Rule 24(a) relief inasmuch as a judgment ordering the reconveyance of the Track would possibly vacate this lien; and that Flushing's interests are not adequately represented by Goldstein inasmuch as their interests are not identical.[8]

In response, Barr argues that Flushing has no judicial lien in the Track to be impaired by his action; and if Flushing does have a lien, it is adequately represented by Goldstein whose goal in the action is identical to Flushing's, to wit, retention of title to the Track in Goldstein.

Although Rule 24(a) requires "a significantly protectable interest" to justify intervention, *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971), a lien on property which is the subject matter of an action by which that lien may be impaired is certainly such a significant interest, *Hoffman v. McClelland*, 264 U.S. 552, 558, 44 S.Ct. 407, 409, 68 L.Ed. 845 (1924); *Peckham v. Family Loan Co.*, 212 F.2d 100, 106 (5th Cir. 1954). Moreover, under New York law, the docketing of a judgment in the county clerk's office gives the judgment creditor a lien on all the judgment debtor's then owned or subsequently acquired real property situate in such county. N.Y.Civ.Prac.Law and Rules § 5203(a) (McKinney 1978); *Hohenrath v. Wallach*, 37 A.D.2d 248, 250, 323 N.Y.S.2d 560, 562 (2d Dep't 1971), *appeal dismissed*, 30 N.Y.2d 674, 282 N.E.2d 891, 332 N.Y.S.2d 106 (1972); *accord, In re Luftman*, 245 F.Supp. 723, 724–25 (S.D.N.Y.1965). Accordingly, Flushing argues, when title to the Track vested in Parr, the lien of its judgment attached to the Track.

The error in this argument lies in its assumption: to wit, that title to the Track vested in Parr. Assuming all facts to be as alleged by Flushing, it is clear that title to the Track never vested as Parr *qua* Parr, and consequently, that Flushing has no judicial lien.

An examination of the Court's records indicates that Parr filed his petition under Chapter XI, section 322, 11 U.S.C. § 722 (repealed 1978) on June 12, 1979. Inasmuch as no trustee was then appointed, Parr was immediately constituted a debtor-in-possession. Section 342, 11 U.S.C. § 742 (repealed 1978); 8 *Collier on Bankruptcy* ¶ 6.30 (14th ed. 1978). Moreover, by an order dated August 27, 1979, Parr was authorized, nunc pro tunc June 12, 1979, to continue in the operation of his business. Then, according to the allegations made by Flushing both here and in the state courts, Parr, on June 14, 1979 fraudulently, and for no consideration caused (as controlling shareholder and

---

**8.** Flushing also claims an interest by virtue of its being a mortgagee of the Track. Resolution

of the Barr-Goldstein action, however, would in no way affect that interest.

chairman of the Board) the Association to transfer title of the Track to himself. *See, e.g.,* Transcript of January 25, 1982 at 5; Appellant's Brief submitted to the Second Department at 16. But as indicated above, on June 14, 1979, Parr was a debtor-in-possession authorized to continue in business. Accordingly, title to the Track vested in Parr *qua* debtor-in-possession not as Parr *qua* Parr. *See* section 342, 11 U.S.C. § 742 (repealed 1978); *Brotherhood of Railway, Airline and Steamship Clerks v. REA Express, Inc.,* 523 F.2d 164, 170 (2d Cir. 1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 82 (1976); *In re Skinner,* 4 B.C.D. 35, 36 (B.C.W.D.N.Y.1978).

Subsequently, on April 7, 1980, Parr was adjudged a bankrupt and Goldstein was appointed Trustee on April 10, 1980. Accordingly, Goldstein succeeded to all that title and interest which Parr possessed as debtor-in-possession except perhaps for property legitimately acquired with non-estate funds in the interim between the filing of the Chapter XI petition and the adjudication. Sections 70(a), 378(a)(2), 11 U.S.C. §§ 110(a), 778(a)(2) (repealed 1978); Fed. R.Bankr.P. 122(1); *In re Martinez,* 355 F.Supp. 650, 651 (D.P.R.1972); *United States v. Paul Hardeman, Inc.,* 260 F.Supp. 723, 725 (M.D.Fla.1966); *Weiss v. Fleetwood Bank,* 261 A.D. 572, 26 N.Y.S.2d 583 (2d Dep't 1941); 4A, 6, 9 *Collier on Bankruptcy* ¶¶ 70.09, 8.04, 10.13[1] (14th ed. 1978). *See also Nicholas v. United States,* 384 U.S. 678, 685 n.13, 690, 86 S.Ct. 1674, 1680 n.13, 1683, 16 L.Ed.2d 853 (1966); *Forrest Paschal Machinery Company,* 3 B.C.D. 1227, 1229 (B.C.M.D.N.C.1977).

Accordingly, unless Flushing is prepared to renounce the position it has fought to establish since August of 1979,[9] to wit, that the transfer was a fraudulent sham, it seems to necessarily follow that the Track passed upon Parr's adjudication from Parr *qua* debtor-in-possession to Goldstein *qua* Trustee and therefore never vested in Parr *qua* Parr. If for that reason alone, it fol-lows that the lien of Flushing's judgment against Parr *qua* Parr could not have attached.

Flushing's arguments are even more ironic when one considers that their first request, if intervention is granted, is that the Barr-Goldstein action be stayed pending completion of the state court fraudulent conveyance action. But if Flushing's judgment is affirmed by the New York Court of Appeals, it will have established that the transfer of the Track was fraudulent under New York Law; which, if it has any significance in these proceedings, would be that Parr *qua* debtor-in-possession did not legitimately acquire the Track thereby confirming the superiority of Goldstein's claim to it vis-a-vis Parr upon his adjudication. But inasmuch as that conclusion apparently obviates Flushing's judicial lien, the relief they request would destroy the very interest they claim as the foundation for the request to begin with.

Accordingly, were the Court forced to rule, it would be hard pressed to sustain Flushing's right to intervene under Rule 24(a). *Cf. Atlantis Development,* 379 F.2d at 827. However, inasmuch as the Court has decided to allow Flushing to intervene pursuant to Rule 24(b), it need not resolve that issue at this time. *See United States v. Columbia Pictures Industries, Inc.,* 88 F.R.D. 186, 189 (S.D.N.Y.1980).

### B. Permissive Intervention

Rule 24(b) provides in pertinent part:
Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b).

Although wholly discretionary with the trial court, *United States Postal Service*

---

**9.** As in the case of Barr, Flushing has not seen fit to supply the Court with a proposed pleading as required by Rule 24(c). Accordingly, the Court has no way of knowing exactly what Flushing intends to argue.

*v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978), the decision whether or not to allow intervention must accomodate the potentially conflicting goals of resolving as many related disputes as possible within a single lawsuit and preventing the prejudice of the original parties by virtue of unwarranted delay. *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C.Cir.1969); *In re David M. Hunt Construction Co.*, 3 B.R. 256, 258–59 (Bkrtcy.E. D.Pa.1980). Moreover, this latter consideration must be accorded the principal weight. *Brennan*, 579 F.2d at 191; *United States v. Yonkers Board of Education*, 518 F.Supp. 191, 202 n.10 (S.D.N.Y.1981); *United States v. Columbia Pictures Industries, Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y.1980).

■ Barr objects to Flushing's intervention essentially on the grounds that Flushing has no intention of litigating the question of title to the Track but seeks intervention only to ask for a stay of that litigation thereby unnecessarily delaying it.

As indicated above, the Court does not know exactly what Flushing intends to do due to its failure to include a proposed pleading with its motion. Suffice it to say, however, that inasmuch as the Court has no intention of granting a stay, this objection should disappear.

Furthermore, inasmuch as the question of title to the Track and the existence of Flushing's judicial lien are clearly interrelated, the Court is desirous of resolving as many of these issues as possible within one proceeding that the results may be binding on all. Finally, the Court notes that these issues are primarily questions of law (there being little dispute as to the facts)[10] and is therefore confident that Flushing's entrance into the Barr-Goldstein action will cause little delay or prejudice.

Accordingly, Flushing is granted leave to intervene pursuant to Rule 24(b) and is directed to serve its answer by March 15, 1982.

*IV.   Flushing's Stay*

■ As its first request upon being granted permission to intervene, Flushing moves to stay the Barr-Goldstein action pending the completion of the state court fraudulent conveyance action.

The state court action was commenced by Flushing in August 1979 by leave of this Court. At that time, both Parr and the Association were operating as debtors-in-possession and clearly would not have sued each other for title to the Track. Moreover, inasmuch as Flushing apparently had no standing in this Court to seek the reconveyance of the Track, *cf.* 11 U.S.C. §§ 544(b), 548 (Supp. IV 1980) (trustee has standing), Flushing opted to sue in state court for a declaration that the transfer was fraudulent under New York law. However, Flushing joined this cause of action with a dozen other allegedly fraudulent transfers of Parr to his relatives and friends. It was apparently for this reason that the New York Court of Appeals refused to hear the appeal on the granting of summary judgment on the Track cause of action. In other words, the order will not be final unless and until severed from the other causes of action. *Cf.* N.Y.Civ.Prac.Law and Rules § 3212(e) (McKinney Supp. 1981–1982).

Flushing now argues that the question of which estate has title to the Track is a question of New York law which is presently before the appropriate state tribunals. Accordingly, they argue, this Court should go no further pending the state court outcome.

This is nonsense. The question of which estate is entitled to the Track is a question of federal law. Section 548 of the Bankruptcy Code, 11 U.S.C. § 548 (Supp. IV 1980) expressly provides criteria for determining this issue. Moreover, while it is true that state law may be employed by a trustee as a predicate for the avoidance of a

---

**10.** The Court also notes that Flushing's fraudulent conveyance action was able to proceed from complaint to judgment at the Appellate Division level by virtue of a motion for summary judgment. *See Flushing Savings Bank v. Parr*, 81 A.D.2d 655, 438 N.Y.S.2d 374 (2d Dep't 1981).

transfer, such is pursuant to federal law. *Id.* at § 544(b).

In the instant case, Barr has alleged claims for relief under both section 548 and sections 273–276 of the New York Debtor and Creditor Law as made applicable to these proceedings by virtue of 11 U.S.C. § 544(b). Furthermore, inasmuch as the section 548 claim is completely independent of state law and inasmuch as there is no telling when or if Flushing will be able to sever the Track cause of action that the New York Court of Appeals might hear that appeal nor if they hear it that they will affirm, it follows that there is no reason to stay Barr from prosecuting his action against Goldstein under section 548.

Whether Barr should be stayed from prosecuting his action under the state law claims for relief is a more difficult question.

On the one hand, Barr is the representative of all the unsecured creditors of the Association. Accordingly, as such he should be able to choose to prosecute the claims available to him as he sees fit in the forum of his choice. This has to be balanced, however, with the interests of Flushing.

Flushing sought and obtained leave of this Court to prosecute its claims against Parr when there were no others present to do so. Consequently, for a year and a half they have litigated their state based claims in the New York Courts and have obtained a judgment on the Appellate Division level. To enjoin Flushing from proceeding further in the state courts would therefore seem a great waste of judicial effort.[11]

The one factor, however, that troubles the Court over all is that it has indicated in this very opinion how logically it would appear not to be in Flushing's best interest to obtain a final judgment declaring the transfer of the Track fraudulent under New York law. That having been said, it would seem anomalous to trust Flushing to do that which is not in its best interest and at the same time to stay the Trustee from that which he is statutorily entitled to do

and in which he may be prejudiced by Flushing's inaction or misfeasance.

Finally, if the Court is incorrect in its analysis, it fails to see how Flushing would be prejudiced. We are told that severance of the grant of summary judgment will be easily obtained resulting in a prompt ruling of the New York Court of Appeals. That being so, the answer is do it! Then come back (intervention having been granted) and make the appropriate motions.

Accordingly, Flushing's motion for a stay of the Barr-Goldstein action is denied.

Settle appropriate orders.

---

11. Although not raised at oral argument, Barr's papers also requested a stay of the state court action. For the reasons expressed in this opinion the motion is denied.